UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM URDA,<br><br>    Plaintiff,<br><br> v.<br><br>JEFFREY SOKSO,<br><br>    Defendants. | CIVIL ACTION NO. 3:21-CV-01178<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

This is a civil rights action initiated upon the filing of the complaint by Plaintiff Adam Urda ("Urda") on July 2, 2021, against Defendant Jeffrey Sokso ("Trooper Sokso") of the Pennsylvania State Police. (Doc. 1). The operative pleading in this matter is Urda's first amended complaint, filed on November 22, 2022. (Doc. 22; Doc. 23). In his amended complaint, Urda asserts claims under 42 U.S.C. § 1983 for unlawful seizure (Count I), false arrest (Count II), malicious prosecution (Count III), abuse of process (Count IV), and common law intentional infliction of emotional distress ("IIED") (Count V). (Doc. 23). On December 27, 2021, Trooper Sokso filed an answer to the amended complaint. (Doc. 26). Before the Court is a motion for summary judgment filed by Trooper Sokso. (Doc. 42). For the reasons set forth herein, Trooper Sokso's motion for summary judgment shall be granted in part and denied in part.[1] (Doc. 42).

---

[1] In his brief in opposition to the motion for summary judgment, Urda "concedes that he has not stated a claim for abuse of process." (Doc. 45, at 22). Additionally, Urda "concedes that based on the Pennsylvania Sovereign Immunity Statute his claim for Intentional Infliction of Emotional Distress shall not survive Defendant's Motion for Summary Judgment." (Doc. 45, at 22). As such, summary judgment is **GRANTED** as to the Fourteenth Amendment abuse of process claim (Count IV) and the Intentional Infliction of Emotional Distress (Count V). These claims (Counts IV, V) are **DISMISSED WITH PREJUDICE**. Moreover, Urda concedes that the appropriate analysis for his claims lies under the Fourth

I.  **BACKGROUND AND PROCEDURAL HISTORY**

This factual background is taken from Trooper Sokso's statement of material facts and accompanying exhibits.[2] (Doc. 43). Urda has filed a brief in opposition to Trooper Sokso's statement of facts and has provided accompanying exhibits. (Doc. 23, at 24-209; Doc. 45). On October 25, 2023, Trooper Sokso filed a reply brief to Urda's brief in opposition. (Doc. 48). The Court conducted oral argument concerning the pending motion for summary judgment on November 6, 2022. (Doc. 51). Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Urda as the non-moving party, with all reasonable inferences drawn in his favor.

On or about May 23, 2020, Trooper Sokso received a call from the Lackawanna County 911 Center concerning a four (4) year-old girl that had facial burns at 21 Eights Point Lane, Jefferson Township, Lackawanna County, Pennsylvania. (Doc. 43, ¶ 1; Doc. 23, ¶ 14) The four-year-old child ultimately had to be life-flighted to Lehigh Valley Hospital for treatment, spent a month in the hospital, was on a ventilator due to aspirating pond water, and has had skin graph surgery. (Doc. 43, ¶ 2; Doc. 23, at 29-30; Doc. 43-1, at 100; Doc. 43-

---

Amendment and not the Fourteenth Amendment. (Doc. 45, at 21). As such, the Court will analyze Urda's claims under the Fourth Amendment.

[2] Urda has failed to file a separate statement of material facts controverting the statement filed by Trooper Sokso. Thus, all materials set forth in Trooper Sokso's statement of facts will be deemed admitted pursuant to Local Rule 56.1. (Doc. 43). Nevertheless, the Court must satisfy itself that Sokso has met its burden of production and therefore is entitled to summary judgment as a matter of law. *See Lorenzo v. Griffith*, 12 F.3d 23, 38 (3d Cir. 1993); *Anchorage Assocs.*, 922 F.2d at 174-75.

2, at 42-43). In addition to the four-year-old child, two others suffered burn injuries in connection with the incident— Urda and Steven Hineline. (Doc. 43, ¶ 3; Doc. 23, at 29-31).

Troopers arrived at the scene and conducted interviews. (Doc. 43, ¶ 4; Doc. 23, at 29-31). Trooper Bohenek informed Trooper Sokso that he had interviewed Urda, and that Urda stated that he had poured RC Racing Fuel on the campfire and that it exploded in all directions. (Doc. 43, ¶ 5; Doc. 23, at 29). Trooper Sokso interviewed Steven Hineline at the scene who stated that, while he had poured motor oil before the fire was going, someone put something into the fire after it was going to cause the explosion, and he believed that it was Urda who did so. (Doc. 43, ¶ 6; Doc. 23, at 30). Steven Hineline stated that he had his back to the fire, and, indeed, his back suffered burns. (Doc. 43, ¶ 7; Doc. 23, at 30; Doc. 43-1, at 99-100). Trooper Sokso interviewed LaRae Bowen who stated that she thought that Urda put something in the fire and that Urda had been saying how sorry he was after it happened. (Doc. 43, ¶ 8; Doc. 23, at 30). Urda did apply an accelerant, namely RC Racing Fuel to the fire. (Doc. 43, ¶ 9; Doc. 23, ¶ 25; Doc. 43-1, at 87-88; Doc. 43-3). Urda had injuries to his face and arms. (Doc. 43, ¶ 10; Doc. 23, at 29-31; Doc. 43-1, at 98). Urda confirmed that he had no prior experience with RC Fuel, and had not paid attention to labels on the jug of fuel. (Doc. 1, ¶ 11; Doc. 43-1, at 67, 82, 86). While Urda testified at his deposition that Steven Hineline handed him the jug, Urda confirmed that Hineline did not give him an instruction of what to do with it, nor did Urda ask any questions about the substance. (Doc. 43, ¶ 13; Doc. 43-1, at 86, 92-93)

On or about August 5, 2020, Urda was charged with one (1) count of Aggravated Assault, 18 Pa. C.S. § 2702(a)(8); one (1) count of Causing or Risking a Catastrophe, 18 Pa. C.S. § 3302(b); three (3) counts of Recklessly Endangering Another Person, 18 Pa. C.S. § 2705

and was arraigned in front of the Honorable Sean P. McGraw with bail set at $50,000.00 unsecured. (Doc. 43, ¶ 14; Doc. 23, ¶ 3). Magisterial District Judge Paul Ware dismissed the charges of Aggravated Assault, 18 Pa. C.S. § 2702(a)(8) and Causing or Risking a Catastrophe, 18 Pa. C.S. § 3302(b); but bound over to the Court of Common Pleas three (3) counts of Recklessly Endangering Another Person, 18 Pa. C.S. § 2705. (Doc. 43, ¶ 15; Doc. 23, at 97). The Court of Common Pleas granted Urda's Petition for Writ of Habeas Corpus and dismissed the three (3) counts of Recklessly Endangering Another Person. (Doc. 43, ¶ 16; Doc. 23, ¶¶ 98, 100). Urda was never placed in handcuffs. (Doc. 43, at 5; Doc. 43-1, at 123). Urda was not placed in a police car, was not held as pre-trial detainee, nor did he spend any time in prison in connection with the incident. (Doc. 43, at 5; Doc. 43-1, at 123).

II. **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[3] *Velentzas v. United States*, No. 4:07-CV-1255, 2010 WL 3896192, *7 (M.D. Pa. Aug. 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

---

[3] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

III.   **DISCUSSION**

In his motion for summary judgment, Trooper Sokso claims he is entitled judgment as a matter of law as no material facts remain in dispute. (Doc. 42, at 1). Specifically, Trooper Sokso submits that: 1) Trooper Sokso had probable cause to file the charges such that there is no actionable claim against him; 2) Urda's malicious prosecution and unlawful seizure claims fail because there was no seizure under the Fourth Amendment; 3) Urda's generalized substantive due process claims fail because he has pled a Fourth Amendment claim; 4) Urda fails to state a claim for abuse of process; 5) Trooper Sokso is entitled to sovereign immunity for the IIED claim; and 6) Trooper Sokso is entitled to qualified immunity for constitutional claims. (Doc. 44, at 2). In response, Urda contends that: (1) whether Trooper Sokso had probable cause to initiate these charges is a question for the jury; (2) Urda was "seized" under the Fourth Amendment such that there is a claim for malicious prosecution and unlawful seizure; and (3) Trooper Sokso is not entitled to qualified immunity for Urda's constitutional claims. (Doc. 45, at 22).

A.   S<span>ECTION</span> § 1983 C<span>LAIMS</span>

Urda's amended complaint asserts federal civil rights claims brought pursuant to 42 U.S.C. § 1983. (Doc. 23). Section § 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a section 1983 claim, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In order to prevail on his Fourth Amendment claims under § 1983, Urda must demonstrate evidence that: (1) a Fourth Amendment seizure occurred, and (2) the seizure was without probable cause. *Gavlock v. Deniker*, No. 4:04-CV-02447, 2005 WL 1273582, at *2 (M.D. Pa. May 27, 2005) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).

> B. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER TROOPER SOKSO VIOLATED URDA'S FOURTH AMENDMENT RIGHTS.

Urda asserts claims for unlawful seizure, false arrest, and malicious prosecution under the Fourth Amendment. (Doc. 23, at 16-20).

The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. CONST. Amend. IV. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). If probable cause is established with respect to any one of the charges for which a plaintiff is arrested, a claim of false arrest must fail. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). To establish a claim for malicious prosecution, a plaintiff must demonstrate that "(1) the defendant initiated a criminal proceeding; (2) which ended in plaintiff's favor; (3) which was initiated without probable

cause; *and* (4) the defendant acted maliciously or for a purpose other than bringing the defendant to justice." *Hamidian v. Occulto*, 854 F. Supp. 350, 353 (M.D. Pa. 1994) (internal citations omitted) (emphasis in original).

Thus, to survive summary judgment, Urda's claims require him to establish that Trooper Sokso lacked probable cause to believe Urda committed a crime. *See Simonson v. Borough of Taylor*, 839 F. App'x 735, 738 (3d Cir. 2020) (holding that Fourth Amendment claims for unlawful search and seizure based on malicious prosecution, false arrest, and false imprisonment all require the plaintiff to establish that the defendant lacked probable cause to believe the plaintiff committed a crime). The Third Circuit has set out the contours of the probable-cause inquiry as follows:

> "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.") (citations omitted); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir.2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime). An arrest was made with probable cause if "at the moment the arrest was made ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citations omitted). In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir.2003). Importantly for this case, it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with, *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."), or whether a person is later acquitted of the crime for which she or he was arrested, *DeFillippo*, 443 U.S. at 36, 99 S.Ct. 2627; *see also Devenpeck*, 125 S.Ct. at 594 ("The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as,

the offense identified by the arresting officer at the time of arrest is inconsistent with [ ] precedent.").

*Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (internal citations omitted) (alterations in original).

Therefore, the Court must "assess whether any reasonable juror could find that [Urda] lacked the requisite mental state for each of the crimes charges." *Dellenbaugh v. Gobrecht*, 2020 WL 5526655, at *5 (W.D. Pa. Sept. 15, 2020) (citation omitted). If probable cause exists for even one of the charged offenses, Urda's claims must fail. *Dellenbaugh*, 2020 WL 5526655, at *5.

Trooper Sokso argues that he had probable cause for each charge. (Doc. 44, at 12). Specifically, Trooper Sokso asserts that he "had probable cause to press all of the charges as each was premised upon reckless behavior, and a reasonable person could conclude that the Plaintiff acted recklessly by putting an unfamiliar substance into a campfire causing an explosion that caused critical injuries to those in the vicinity."[4] (Doc. 44, at 12). In response, Urda argues that whether Trooper Sokso had probable cause to initiate these charges is a question for the jury and based on the evidence in the record, reasonable minds can differ as to whether or not Trooper Sokso had probable cause to arrest Urda. (Doc. 45, at 14).

Based on the record, Urda was charged with one count of Aggravated Assault, 18 Pa. C.S. § 2702(a)(8); one count of Causing or Risking a Catastrophe, 18 Pa. C.S. § 3302(b); three

---

[4] In support of his argument, Trooper Sokso points to evidence in the record that Urda "asked no questions and did not bother to read the label, or observe the graphic depicting an explosion on the front of the bottle, before putting it on the campfire." (Doc. 44, at 16). Trooper Sokso also points to testimony by Urda that he did not look to see where others were before applying the unfamiliar substance to the fire and there was alcohol in his system when making the decision. (Doc. 44, at 16; Doc. 43-1, at 91). However, as discussed *supra*, Urda stated to Bohenek that when he poured RC fuel onto the fire, nobody was around the fire. (Doc. 23, at 29). As there is dispute in the record as to Urda's awareness of where other individuals were when pouring RC fuel onto the fire, the Court finds summary judgment is not appropriate at this juncture.

counts of Recklessly Endangering Another Person, 18 Pa. C.S. § 2705 and was arraigned in front of the Honorable Sean P. McGraw with bail set at $50,000.00 unsecured. (Doc. 43, ¶ 14; Doc. 23, ¶ 3; 25-28). A person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older. 18 Pa. Stat. and Cons. Stat. Ann. § 2702(a)(8). Second, a person is guilty of causing or risking a catastrophe, if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section. 18 Pa. C.S. § 3302(b). Third, a person is guilty of recklessly endangering another person if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. § 2705. Under Pennsylvania law, a person acts recklessly when he "consciously disregards a substantial and unjustifiable risk." 18 Pa. Cons. Stat. § 302(b)(3).

      Viewing the facts in the light most favorable to Urda, a reasonable juror could find that Urda was not consciously disregarding an unjustifiable risk and could find a lack of probable cause for the aforementioned crimes. Based on the affidavit of probable cause, prior to Trooper Sokso's arrival at the scene, Trooper Bohenek interviewed Urda. (Doc. 23, at 29). Urda relayed to Trooper Bohenek that he and others were having a small gathering with friends and family by a pond and that a small fire in a burn barrel and was smoldering but not catching. (Doc. 23, at 29). Urda stated that he poured RC racing fuel onto the fire to accelerate it and that when he did, it exploded in all directions, causing him to catch on fire. (Doc. 23, at 29). Urda explained that he tried to extinguish the fire but was unable to, and so he jumped in the pond. (Doc. 23, at 29). Notably, Urda stated to Bohenek that when he poured RC fuel onto the fire, nobody was around the fire. (Doc. 23, at 29). There is nothing in the affidavit of

probable cause or the record to indicate that Trooper Sokso had any reason to believe that Urda had any knowledge of the danger of the RC fuel as to consciously disregard the risk. Rather, Officer Bohenek noted that Urda himself appeared to have severe burns on his face and arms, and Trooper Sokso interviewed a witness who stated that she heard Urda stating that he was sorry. (Doc. 23, at 29-30). Based on the information available to Trooper Sokso at the time, a reasonable juror could conclude that Urda was not acting recklessly in light of the totality of the circumstances as to satisfy the *mens rea* element of the crimes. For these reasons, the Court will deny the motion for summary judgment by Trooper Sokso on Urda's Fourth Amendment claims.

### C. WHETHER A SEIZURE OCCURRED UNDER THE FOURTH AMENDMENT

Alternatively, Trooper Sokso argues Urda's unlawful seizure and malicious prosecution claims fail because Urda was not "seized" for the purposes of the Fourth Amendment. (Doc. 44, at 18). "To recover under 42 U.S.C. § 1983, [the Plaintiff] must establish that a state actor engaged in conduct that deprived him of 'rights, privileges, or immunities' secured by the constitution or laws of the United States." *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000). When the conduct alleged is an unlawful seizure, the Plaintiff must show that he was seized without probable cause in violation of the Fourth Amendment. *See, e.g., Orsatti v. New Jersey State Police,* 71 F.3d 480, 482–83 (3d Cir.1995) (discussing elements of a section 1983 claim for false arrest). Similarly, to establish a § 1983 claim, a plaintiff must be able to satisfy the common law elements of a malicious prosecution claim. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 792 (3d Cir. 2000). These are: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4)

11

the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle*, 211 F.3d at 792 (citing *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996)). The constitutional component of the claim also requires a showing of a loss of liberty beyond simply showing an unlawful arrest. *Merkle*, 211 F.3d at 792 (citing *Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998)); *accord McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (malicious prosecution claim premised on a violation of the Fourth Amendment includes as an element a showing that "(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.") (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *Johnson*, 477 F.3d at 82.

In the present case, it is undisputed that Urda was never arrested in the traditional sense. Rather, his liberty was restricted in the following ways: he had to post a $50,000 unsecured bail, had to attend all court hearings including his arraignment and preliminary hearing, his travel was restricted to the Commonwealth of Pennsylvania, and he was prohibited from frequenting alcohol serving establishments. (Doc. 23, ¶¶ 35, 39; 24-32; Doc. 45, at 21; 83-108). The United States Supreme Court has held that an arrest need not only be effected through direct physical force: "where that is absent, *submission* to the assertion of authority" can constitute an arrest. *California v. Hodari D.,* 499 U.S. 621, 626 (1991). As the Third Circuit has interpreted the case law,

> seizure can be of different intensities. Thus, whereas an arrest that results in detention may be the most common type of seizure, an investigative stop that detains a citizen only momentarily also is a seizure. *See Terry v. Ohio,* 392 U.S. 1, 16–18, 88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889 (1968). *Terry* demonstrates that the legal distinction between an arrest and an investigative stop is not that one is a seizure and the other is not, but that the police may be able to execute a stop based on circumstances not rising to the level of probable cause for an arrest. *See* 392 U.S. at 2 n. 16, 88 S.Ct. at 1879 n. 16. This analysis suggests that

> the restrictions imposed on [the plaintiff, discussed a p. 12, *infra,*] would qualify as a seizure, even though they did not amount to a full blown arrest.

*Gallo v. City of Philadelphia,* 161 F.3d 217, 223 (3d Cir.1998).

In this respect, Urda argues "that the restrictions imposed upon [Urda], having to answer to the charges at a preliminary hearing and being subjected to processing at the Lackawanna County Processing Center would qualify as a seizure, even though they did not amount to a full blown arrest." (Doc. 45, at 20). Additionally, Urda argues that his travel was restricted to the Commonwealth of Pennsylvania, he was prohibited from frequenting alcohol serving establishments and lost his job. (Doc. 45, at 21).

In *Gallo v. City of Philadelphia, supra,* the Third Circuit found that a criminal defendant who "had to post a $10,000 bond, ... had to attend all court hearings including his trial and arraignment, ... was required to contact Pretrial Services on a weekly basis, and ... was prohibited from traveling outside New Jersey and Pennsylvania" had in fact been seized under the Fourth Amendment *Gallo,* 161 F.3d at 222. The Circuit subsequently clarified, in more general terms, that, while "[p]retrial custody and some onerous types of pretrial, noncustodial restrictions constitute a Fourth Amendment seizure," merely having to attend one's criminal trial does not. *DiBella v. Borough of Beachwood,* 407 F.3d 599, 603 (3d Cir.2005). In the latter case, in finding that no seizure sufficient to support a section 1983 claim occurred under the facts presented, the *DiBella* court noted that the civil plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials ...." *DiBella,* 407 F.3d at 603.

13

Here, the Court finds Urda's pretrial restrictions are more similar to the plaintiff in *Gallo* who had to post a $10,000 bond, attend all court hearings including his trial and arraignment, was required to contact pretrial services on a weekly basis, and was prohibited from traveling outside New Jersey and Pennsylvania. *Gallo,* 161 F.3d at 222. As discussed *supra*, Urda had to attend all court hearings including his arraignment and preliminary hearing, post an unsecured bail of $50,000, and his travel was restricted to Pennsylvania. (Doc. 23, ¶¶ 35, 39; 24-32; Doc. 45, at 21; 83-108). Notably, the travel restriction imposed on Urda distinguishes this case from cases where the Court has found a Fourth Amendment seizure did not occur despite the plaintiff being released on unsecured bail and required to attend court proceedings. *See Heilimann v. O'Brien*, No. 3:14CV1271, 2017 WL 898160, at *6-7 (M.D. Pa. Mar. 7, 2017) (concluding that plaintiff's bail condition requiring that he appear at all subsequent court hearings did not amount to a deprivation of liberty, especially since there was no evidence indicating that "the bail authority ever imposed additional orders rising to a level of something more" and plaintiff "was never required to contact pretrial services prior to trial, nor was he prohibited from travelling."); *McCormack v. Livergood*, 353 F. Supp. 3d 357, 368 (M.D. Pa. 2018) ("The court finds that the *Gallo* case, upon which plaintiff relies, is distinguishable from his case since he was not required to contact pretrial services weekly and since he was not prohibited from traveling outside of the state.") While it does not appear that Urda was required to report to pretrial services, the Court finds the presence of travel restrictions as well as mandatory court appearance are sufficient to create a jury question on whether Urda was in fact seized. *Black v. Montgomery Cnty.*, 835 F.3d 358, 368 (3d Cir. 2016), as amended (Sept. 16, 2016); *see also Gallo*, 161 F.3d at 224–25 ("[C]onstraints on Gallo's

14

freedom were not limited to restrictions on his travel, he was also compelled to attend all court hearings."). Accordingly, summary judgment will be denied on this ground.

D. SOKSO IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Sokso moves for summary judgment on the grounds that he is entitled to qualified immunity for each of the claims that Urda alleges against him. (Doc. 44, at 22). Under the doctrine of qualified immunity, law enforcement officers, like other public officials, performing discretionary duties within the scope of their employment, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The two-pronged test for whether qualified immunity applies requires this court to determine (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of a defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir.2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Given the discussion above, when viewed in the light most favorable to him, Urda's contentions do make out Fourth Amendment constitutional violations for false arrest, unlawful seizure, and malicious prosecution. The Court, therefore, must proceed to the second step of the analysis to determine whether the constitutional rights at issue were clearly established at the time of the alleged violation. This requires the Court to ask the question of whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Montanez*, 603 F.3d at 250.

If the right violated was "clearly established," then the official is not entitled to immunity. "To be clearly established, a right must be sufficiently clear that every reasonable

official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012)*; Saucier v. Katz*, 533 U.S. 194, 202 (2001). "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Reichle*, 566 U.S. at 664. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

Here, the "the right to be free from arrest except on probable cause, was clearly established" at the time of Urda's arrest. *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) (citing *Orsat*ti, 71 F.3d at 483). Similarly, the right to be free from prosecutions on criminal charges that lack probable cause was also known and clearly established at the time that Trooper Sokso prepared his affidavit. *See Andrews*, 853 F.3d at 705 (citing *Donahue v. Gavin*, 280 F.3d 371, 380 (3d Cir. 2002)). Urda's right to be free from prosecution on criminal charges that lack probable cause was "grounded in well-settled law and thus, on the record of this case, 'it would be clear to a reasonable officer that [Trooper Sokso's] conduct was unlawful in the situation [he] confronted.' " *Andrews*, 853 F.3d at 705 (quoting *Saucier*, 533 U.S. at 202).

Accordingly, the Court will deny Trooper Sokso's motion for summary judgment on the issue of qualified immunity.[5] (Doc. 42); *See Contreras v. Conrad*, No. 3:17-CV-02360, 2020 WL 2193429, at *9 (M.D. Pa. May 6, 2020) (denying summary judgment on qualified immunity argument because genuine issues of material fact existed as to whether defendants violated plaintiff's Fourth Amendment rights); *Moore v. Monaghan*, No. CV 19-4400, 2021 WL 39631, at *9 (E.D. Pa. Jan. 5, 2021) (denying entry of summary judgment on qualified immunity because genuine issues of material fact existed whether defendants violated plaintiff's Fourth Amendment rights); *Figueroa v. Moyer*, No. 3:21-CV-601, 2023 WL 4195846, at *14 (M.D. Pa. Jan. 31, 2023), *report and recommendation adopted*, No. CV 3:21-601, 2023 WL 4188024 (M.D. Pa. June 26, 2023) ("The factual dispute regarding the issue of probable cause also defeats the defendants' argument that they are entitled to qualified immunity.").

IV. **CONCLUSION**

For the foregoing reasons, Trooper Sokso's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 42).

An appropriate Order follows.

**Dated: April 9, 2024**                                *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**

---

[5] Although the Court denies Trooper Sokso's motion for summary judgment on Urda's Fourth Amendment claims, Trooper Sokso may again raise qualified immunity as a defense after the fact finder has resolved the disputed issues. *See Geist v. Ammary*, 40 F. Supp. 3d 467, 483 (E.D. Pa. 2014). ("Qualified Immunity, however, may be raised again as a defense after the disputed issues of fact are resolved.").